The Full Commission finds as fact and concludes as matters of law the following, which were entered as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence as follows:
 a. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
 b. At such time, an employment relationship existed between plaintiff and defendant-employer.
 c. At the time of her accident on 23 November 1994, plaintiff was a 21 year old clerk. Plaintiff's date of birth was 25 January 1973, and her Social Security number is 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.
 d. Industrial Commission Form 18, dated 2 March 1995, is stipulated into evidence.
 e. The medical records concerning plaintiff from Loris Community Hospital, the Medical University of South Carolina and Columbus Physical Therapy, are stipulated into evidence.
 f. Stipulated Document 1, a handwritten Form W-2 Wage and Tax Statement for 1994, is stipulated into evidence.
 g. Stipulated Document 2, Form W-2 Wage and Tax Statement for 1994, is stipulated into evidence.
 h. Amerisure workers' compensation policy WC 1094318-01, marked as Stipulated Document 3, is stipulated into evidence.
 i. The issue for determination before Deputy Commissioner Taylor was whether Amerisure Insurance Company provided coverage to Lonnie Lynwood Norris for the business in which Gloria Watts was working at the time of her injury.
2. The transcript of the proceeding before former Deputy Commissioner Scott Taylor as well as the Opinion and Award rendered by former Deputy Commissioner Scott Taylor were received into evidence without objection.
3. A set of Forms 22 and additional wage documents were marked as stipulated exhibit 4 and received into evidence.
4. A 6 August 1997 letter from Dr. Patel along with medical bills were marked as stipulated exhibit 5 and received into evidence.
***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Defendant Norris owns and operates two sole proprietorships, Norris Land Clearing and Drainage, and Norris Country Store. Defendant Norris also owns Norris County Kitchen, a grill, which is an addition to the back of the Country Store. (The grill may be considered a third proprietorship, but that issue is not relevant to this case.)
2. At the time of the hearing in 1995, defendant Norris had owned and operated Norris Land Clearing for thirty years. He employs truck drivers and land equipment operators to conduct that business. He also employs a bookkeeper, Susan Prince, who handles the bookkeeping for both proprietorships. The federal tax identification number for Norris Land Clearing is 56-0852883.
3. At the time of the hearing in 1995, defendant Norris had owned and operated Norris Country Store for about four years. He sells groceries, gas, and convenience store items. The Country Store is located in a separate building across Highway 904 (Route 3, Tabor City) from the Land Clearing business. The federal tax identification number for Norris' Country Store is 56-1742542. Norris Land Clearing and Norris' Country Store are in separate locations.
4. Norris Land Clearing and Norris Country Store are not of the same class and kind of business. They are separate and distinct businesses. Defendant Norris has paid Country Store employees from money earned in Norris Land Clearing, based on availability of funds. However, defendant maintains separate checking accounts for the two businesses.
5. The operation of Norris Country Store was not incidental or appurtenant to the regular business of Norris Land Clearing.
6. Plaintiff was hired by defendant Norris to work in the Country Store. Her primary responsibility was running the cash register, but she also assisted in other tasks as needed. During the last couple of months of her employment, plaintiff occasionally assisted the bookkeeper, Susan Prince, with filling out tickets, or bills, to customers of Norris Land Clearing. On a couple of occasions only, plaintiff had worked in the Norris Land Clearing office. At all other times, she worked in the Country Store. Plaintiff's salary was paid either from the Norris Land Clearing or the Country Store account, depending on which account had the most money. However, plaintiff was primarily an employee of Norris Country Store.
7. While working in the Country Store, plaintiff would occasionally take messages for or transfer calls to the Land Clearing business as a convenience for the Land Clearing business. The two businesses had different telephone numbers.
8. On 23 November 1994, plaintiff was assisting with loading the drink machine in the Country Store when she was shot during an armed robbery. The robbery occurred around 9:00 p.m., when the Land Clearing business was closed.
9. In the months just before June 1993, defendant, by choice, did not carry workers' compensation insurance for any of his businesses, including Norris Land Clearing. As of June 1993, defendant had obtained a job in South Carolina and needed proof of workers' compensation insurance. For this reason, defendant contacted Waccamaw Insurance Agency to obtain workers' compensation coverage for Norris Land Clearing.
10. On or about 11 June 1993, defendant signed an Application for workers' compensation insurance coverage with the Waccamaw Insurance Agency. On the Application, the business and operations was identified as "land clearing." Defendant is identified as the employer and the Application referenced the federal identification number, telephone number, and address for Norris Land Clearing. On the Application, defendant stated the payroll for the excavation and drivers was $49,100 and was $8,200 for clerical employees. The sum total for the payroll was approximately the same as the wages for Norris Land Clearing ($57,000) as shown on defendant's federal tax form. The Application for workers' compensation coverage did not include and was not intended to include the Country Store.
11. Defendant Norris' Application tends to show that he did not have workers' compensation insurance for Norris Land Clearing from September 1992 until 11 June 1993, as Mack Skipper (incorrectly identified as "Max" Skipper in the transcript), the Waccamaw agent, testified.
12. The parties did not offer into evidence the policy for the period 12 June 1993 through 12 June 1994. However, based on the hearing testimony, this policy was not issued specifically to Norris Land Clearing. Rather, it was issued to defendant individually, as was the policy for the period 12 June 1994 through 12 June 1995. It would have been helpful to the Commission if Amerisure/Michigan Mutual (hereinafter, noted as "Amerisure") had presented evidence of the policy in effect in 1993, and if a certified copy of the policy in question had been tendered into evidence, along with some testimony regarding the policy.
13. Mack Skipper was the same agent who had discussed workers' compensation insurance with defendant Norris in 1991, when defendant Norris opened the Country Store, and on subsequent occasions. On or about 28 June 1993, Skipper quoted workers' compensation coverage for the Country Store, based on a payroll of $35,000. On 30 July 1993, Skipper also followed up with a memo reminding defendant Norris that workers' compensation coverage for the Country Store was required if defendant Norris employed three or more employees. In July 1994, the Waccamaw agency provided another quote to defendant Norris for workers' compensation coverage for the Country Store.
14. Defendant Norris never insured the Country Store under a policy with Amerisure. Sometime after plaintiff's injury, defendant obtained coverage for the Country Store from a different insurer.
15. In light of the evidence of defendant Norris' refusal to obtain coverage for the Country Store and his clear intent to purchase coverage for the land clearing business only, the testimony of defendant Norris is not credible and is given no weight. The Forms 22 are admissible to show plaintiff's wages and days worked. To the extent that the Forms 22 purport to delineate specific days that plaintiff worked for Norris Land Clearing as opposed to the Country Store, they are not credible proof on the issue of whether plaintiff was employed at Norris Land Clearing or the Country Store.
16. Defendant Norris did not pay for and did not intend to obtain workers' compensation insurance from Amerisure which would cover his liability to his employees at Norris Country Store.
17. The Amerisure policy is not ambiguous. The policy did not provide coverage to the Country Store by virtue of the fact that the policy was issued to defendant Norris rather than to Norris Land Clearing. The plain meaning of the policy is that it was issued to defendant Norris as the employer at the business identified by the federal tax identification number. The policy is not rendered ambiguous by the fact that other non-related, separate businesses owned by defendant Norris are not specifically excluded. The policy was issued to defendant Norris as the legally liable employer.
18. The first page of the policy refers to an address at "Route 3, Box 257-D" in Tabor City. Although there is testimony that there is one "box" for both the Country Store and Norris Land Clearing, all documents in the record, including tax records and defendant's policy Application, refer to Box 257-D for Norris Land Clearing and Box 257 for the Country Store, thus indicating different addresses for the two businesses. Clearly, Norris Land Clearing and the Country Store are at different physical locations. The policy specifically provides that it applies to "NO ADDITIONAL LOCATIONS." A miscellaneous schedule in the policy contains the telephone number for Norris Land Clearing only.
19. The fact that Skipper wrote to defendant Norris at the Box 257-D address regarding coverage for the Country Store is of no import. First, Skipper is not an agent of Amerisure. Second, he wrote to defendant Norris at the address defendant Norris used when applying for the Land Clearing business; this does not imply that the address or location for the Country Store was the same as that for Norris Land Clearing.
20. The plain meaning of "workplaces" in paragraph E. of the General Section of the policy is to delineate what other locations of the Land Clearing business are covered. It would be unreasonable to read this section to expand coverage to other unrelated businesses which the policy does not otherwise provide coverage.
21. The alleged ambiguity in the policy does not relate to the wording of a clause drafted by the insurer, but relates to information provided by defendant Norris as to the identity of the business for which he intended to obtain liability protection. There is no doubt regarding the business which defendants intended to insure.
22. There is no credible evidence that any prior policy obtained by defendant Norris named the insured as "Lonnie Norris Land Clearing" rather than "Lonnie Lynwood Norris."
23. The Amerisure policy provided coverage for Lonnie Lynwood Norris, as the insured employer, at Route 3, Box 257-D, Tabor City, North Carolina, with a telephone number of 653-2622. The employer identification number on the policy was 56-0852883. The anticipated payroll to be insured was shown as excavation NOC and drivers payroll of $49,100.00, and a clerical office employee's payroll of $8,200.00.
24. The Amerisure policy provided liability coverage for defendant Norris in his land clearing business only.
25. At the time of plaintiff's injury, plaintiff was filling a drink box with beverages, an activity related solely to her employment at Norris Country Store. Plaintiff's activity did not further the business of the land clearing business.
26. Defendant Norris, as the employer doing business as Norris Country Store, is subject to the North Carolina Workers' Compensation Act; however, defendant was non-insured for Norris Country Store at the time of plaintiff's injury on 23 November 1994.
27. At the time of the hearing before Deputy Commissioner Berger, plaintiff was a twenty-four-year-old female with a high school degree. Plaintiff was attending cosmetology school, but was unable to complete the program because of her injuries.
28. During an armed robbery at Norris Country Store on 23 November 1994, plaintiff received a gunshot wound. A bullet entered plaintiff's face and lodged near the base of her neck. On 19 January 1996, the bullet was surgically removed.
29. As a result of the gunshot, plaintiff sustained permanent damage to her throat. Plaintiff has sustained permanent damage to the muscles on the left side of her throat that has decreased her gag reflex. Plaintiff has permanent damage that at times affects her swallowing and ability to control her saliva. Her voice has changed. An equitable amount of compensation for this permanent damage to plaintiff's throat is $12,000, as determined by Deputy Commissioner Berger.
30. As a result of the gunshot, plaintiff has sustained permanent damage to her ability to taste and smell. Dr. Patel testified that plaintiff's sense of smell has been impaired, and the Commission so finds. An equitable amount of compensation for the impairment to her senses of taste and smell is $3,000, as determined by Deputy Commissioner Berger.
31. As a result of the gunshot, plaintiff's spinal cord was damaged, causing permanent impairment to her left leg and left arm. She can stand and walk short distances and for short periods of time. She can grasp and hold objects in her left (non-preferred) hand, but has difficulty with digital dexterity and experiences fatigue in her arm.
32. As a result of the gunshot, plaintiff sustained a scar on her face. An equitable amount of compensation for the scar is $1,000.00, as determined by Deputy Commissioner Berger.
33. As a result of the gunshot, plaintiff sustained a 3/4 inch scar on her stomach. No evidence was presented that this scar would impair plaintiff's future occupational opportunities.
34. On 23 November 1994, plaintiff was earning an average weekly wage in the amount of $122.57.
35. As a result of the gunshot wound and the resulting surgery, plaintiff was unable to earn any wages beginning 23 November 1994 through 1 April 1996.
36. On 1 April 1996, plaintiff reached maximum medical improvement with respect to her spinal injury.
37. As of 1 April 1996, plaintiff has been able to return to work that does not involve constant standing and walking as well as any job that requires good dexterity with her left hand. Plaintiff cannot work as a cosmetologist because of the weakness in her left hand.
38. Since 1 April 1996, plaintiff has not conducted a reasonable job search. Plaintiff has not returned to another job earning less wages than she was earning on 23 November 1994. It would not have been futile for the plaintiff to look for work, in light of her age, educational background, and physical limitations.
39. On 6 August 1997, plaintiff reached maximum medical improvement with respect to her throat injury.
40. Defendant Norris employed at least three employees at Norris Country Store for the time period beginning 18 March 1994 through 23 November 1994.
41. Defendant Norris had the ability and authority to secure workers' compensation insurance that would have covered the plaintiff's injuries.
42. Defendant Norris willfully neglected to purchase workers' compensation insurance to cover his employees working for Norris Country Store for the time period beginning 18 March 1994 through 23 November 1994.
***********
Based on the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 23 November 1994, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant Norris in his Country Store business. Plaintiff's injury did not arise out of and in the course and scope of employment with defendant Norris in his land clearing business. G.S. § 97-2.
2. The policy with defendant Amerisure/Michigan Mutual did not provide coverage for defendant in his Country Store business, and did not provide him workers' compensation insurance for the employment in which plaintiff was engaged at the time of her injury. Accordingly, defendant is not entitled to indemnification from defendant carrier.
3. Plaintiff is entitled to total disability compensation at a rate of $81.72 for the time period beginning 23 November 1994 to 1 April 1996. G.S. § 97-29.
4. Because this claim was denied, plaintiff had the burden to prove by the greater weight of the evidence that she was unable to earn any wages in the same or any other employment after 1 April 1996. Plaintiff failed to prove by the greater weight of the evidence that she was unable to earn wages after 1 April 1996.Russell v. Lowes Product Distrib., 108 N.C. App. 762,425 S.E.2d 454 (1993).
5. Plaintiff is entitled to compensation for the permanent damage to her throat, and to her senses of taste and smell. G.S. § 97-31(24).
6. Plaintiff is entitled to compensation under the Act for her facial scar. G.S. § 97-31(22).
7. Plaintiff is entitled to compensation for the impairment to her left leg and left arm resulting from her spinal injury. G.S. §§ 97-31(13) and -31(15).
8. Defendant Norris is obligated to pay for all medical treatment that is reasonably required to effect a cure or give relief. G.S. § 97-25.
9. Defendant Norris was legally obligated to secure workers' compensation to cover his employees at Norris Country Store for the time period from 18 March 1994 to 23 November 1994 and is subject to penalties for his failure to do so. G.S. § 97-94(b).
10. Defendant Norris had the ability and authority to secure workers' compensation insurance for his liability to employees at Norris Country Store and willfully and intentionally refused or neglected to do so. He is subject to a civil penalty in an amount up to 100% of the amount of any compensation due plaintiff. G.S. § 97-94(d).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant Norris shall pay temporary total disability compensation at a rate of $81.72 for the time period beginning 23 November 1994 to 1 April 1996. This amount has accrued and shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendant Norris shall pay $15,000.00 to plaintiff for the permanent damage to her throat and for the impairment to plaintiff's taste and smell, and an additional $1,000.00 for plaintiff's facial scar, subject to the attorney's fee approved herein.
3. Within 60 days of the date of the filing of this Opinion and Award, defendant Norris shall pay for a medical evaluation to be conducted by a physician jointly agreed upon by plaintiff and defendant Norris in order to obtain a second expert medical opinion on a rating for the impairment to plaintiff's left arm and to her left leg consistent with the North Carolina Industrial Commission Rating Guide. Thereafter, if the parties are unable to agree on an appropriate rating, the parties may submit evidence to the undersigned for decision, without the necessity for a hearing before a deputy commissioner.
4. As a result of his failure to purchase workers' compensation insurance, defendant Norris shall pay a $50.00 fine for each day beginning 18 March 1994 through 23 November 1994, for a total of $12,550.00. This amount shall be paid by a check payable to the Industrial Commission and sent directly to Kay Emanuel at the Industrial Commission, subject to the waiver in paragraph 6 below.
5. As a result of his failure to purchase workers' compensation insurance, defendant-Lynwood Norris shall pay a civil penalty in the amount of $27,000.00. This amount shall be made by a check payable to the Industrial Commission and sent directly to Kay Emanuel at the Industrial Commission, subject to the waiver in paragraph 6 below.
6. The penalties assessed above are waived on the following condition: defendant Norris shall pay the compensation awarded to plaintiff herein and, in addition, shall pay a $1,000.00 civil penalty within ten days after the parties have exhausted their appellate rights.
7. Defendant Norris shall pay for all medical expenses incurred by the plaintiff as a result of the 23 November 1994 injury by accident including, but not limited to, the surgery performed by Dr. Patel.
8. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
9. Defendant Norris shall pay an expert witness fee in the amount of $240.00 to Dr. Patel.
10. Amerisure/Michigan Mutual Insurance Company is hereby dismissed.
This the ___ day of July 1999.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER